## ELDRIDGE v. BARREDA. (No. 6584.)

(Court of Civil Appeals of Texas. San Antonio. June 8, 1921. Rehearing Denied June 29, 1921.)

1. Fraud ⬅️28—Purchaser in unrecorded deed entitled to damages on vendor's resale to innocent purchaser.

As between the vendor and purchaser in an unrecorded deed, title passes to the purchaser under Rev. St. 1911, art. 6824, and no act of the vendor can deprive the purchaser of right to recover damages from a fraudulent second sale of the land to an innocent purchaser.

2. Judgment ⬅️708—Inadmissible against one not party to former suit.

In suit by the purchaser of land for damages accrued through the fraudulent acts of the vendor in selling the land to another after selling it to plaintiff purchaser, judgment of foreclosure by defendant vendor in another case of a vendor's lien on land sold to a third party by the vendor was not admissible in evidence against the plaintiff, who was not a party to the lien suit.

3. Fraud ⬅️28—Vendor's appropriation of vendor's land by resale unjustifiable.

Even if no trust exists, where land is sold, and deed and release to the property delivered to the purchaser, and the vendor paid, the vendor cannot thereafter sell the land again to another party, the first purchaser's deed not having been recorded, without rendering himself liable in damages to the first purchaser; the first purchaser being under no obligation to speak to the vendor about the appropriation of his property.

4. Fraud ⬅️59(I)—Damage to purchaser defrauded by resale is value of land with interest.

The vendor of land, who sold a second time, the first purchaser not having recorded his deed, is liable to the first purchaser to pay the value of the land at the time it was sold to him, with 6 per cent. interest.

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Suit by W. S. Eldridge against C. P. Barreda. From judgment for defendant, plaintiff appeals. Judgment reversed, with instructions.

J. M. Mothershead, of Fort Worth, for appellant.

Seabury, George & Taylor, of Brownsville, for appellee.

FLY, C. J. This is a suit for damages instituted by appellant against appellee, alleged to have accrued through the fraudulent action of appellee in selling a certain tract of land to another which he had previously sold to appellant, but who had failed to record his deed of conveyance and was prevented from recovering the land because the last party to whom appellee sold the land was an innocent purchaser. Appellee answered by general demurrer and general denial. The court rendered judgment in favor of appellee.

The facts disclose that appellee owned 1,000 acres of land in Cameron county, a part of partition share No. 1, in the Espiritu Santo grant, and on February 12, 1912, in consideration of three promissory notes, each for $11,000, payable in one, two, and three years, respectively, made, executed, and delivered to Samuel Spears, trustee, a warranty deed, with vendor's lien retained, to said land. In that deed was the recital:

"I will execute, acknowledge and deliver releases of the lien retained on the above-described land upon sale of any part thereof and as to the parts sold, in parcels of 20 acres or more, upon payment to me of $35 per acre."

The land was conveyed to Spears in trust for Mrs. Meta Wedegartner of San Benito, Tex., to be held for her and conveyed to any person designated by her, and upon her assumption of the three notes given by Spears, as trustee to appellee, the trustee conveyed the land to Mrs. Wedegartner, May 9, 1912. Both of the deeds mentioned were duly recorded. On May 25, 1912, Mrs. Wedegartner entered into a contract with the San Benito Land & Water Company and W. S. Eldridge, appellant herein, whereby she conveyed to said appellant a parcel of land containing 39.06 acres out of the Espiritu Santo grant, being lot No. 2 of the "Iowa Gardens," as shown on a certain map of such gardens. The contract also contained an obligation on the part of the company to furnish water for irrigation purposes. Appellee released his vendor's lien on lot No. 2 to the trustee for Mrs. Wedegartner, which inured to the benefit of appellant. That release was made on August 26, 1912, but appellant placed none of his conveyances on record. On February 15, 1919, appellee, although having parted with all title to lot No. 2, sold and conveyed the same to F. H. Handley, who, it is admitted, was an innocent purchaser. Appellant has paid all amounts due by him on the purchase money of lot No. 2.

Under that testimony, which was not contradicted, appellee was liable to appellant for all damages arising from a sale by appellee to Handley of land already sold by him to appellant. That liability could not be avoided by any judgment afterwards obtained by appellee against Spears. He knew that the land had been sold by Spears to appellant, for in his release of the vendor's lien on lot No. 2 he recited that—

Spears had "conveyed 39.06 acres of land to W. S. Eldridge, being lot 2, delineated upon a map entitled 'Map of Iowa Gardens under Canal System of San Benito Land & Water Company,' and the sum of $1,367.10 having been paid to me by said assignee."

[1] The first assignment of error is sustained. As between appellant and appellee the title to the 39.06 acres of land contained in lot No. 2 had passed to appellant, and no act of appellee could deprive appellant of the right to recover the damages from a fraudulent second sale of the land. Any other conception of justice and right should be brushed aside as untenable in any court where law and equity are extended to litigants. Upon what theory appellee was extended protection and shielded from the results of his unlawful act does not appear from this record. As said by this court in the similar case of Mit-

chell v. Simons, 53 S. W. 76, both the allegations and proof show that appellee had perpetrated a fraud upon the appellant by taking advantage of a failure to record the deed to him, and selling the land to another party who would, on account of lack of notice, be placed in the position of an innocent purchaser as to appellant, and thus deprive him of his land, and appellant is liable for the damages arising by reason of such fraudulent conduct. The doctrine of that case has never been questioned, but the case has been cited several times with approval in and out of the state. It is based on the statute. Article 6824.

[2] Over the objections of appellant, appellee was permitted to read in evidence a judgment of foreclosure by appellee in a case styled Barreda v. Spears, Trustee, et al., of a vendor's lien on the 1,000 acres of land sold to Spears by appellee. Appellant was not a party to that suit, in which the judgment was obtained on December 9, 1914, and the land was sold to appellee. How this judgment could have any bearing upon the rights of appellant does not appear. The second assignment of error is sustained.

There were no pleas of limitation, laches, or stale demand. It is a plain case of a vendor selling a tract of land to one man, and being paid the purchase money, and then selling it to another because the deed to the first party had not been recorded. It is a plain case of an attempt to defraud the first vendee. No defense was really offered, and each and all of the assignments of error are sustained.

[3] The novel proposition is made that the deed and release to the property having been delivered to appellant, and appellee having received the full purchase price, no relation of trust existed between appellant and appellee, as the transaction became entirely executed. That academic proposition might be true or not, but it would not justify appellee in appropriating the property of another. He will not be permitted to escape from the consequences of selling the land of another and appropriating the proceeds by any such fine spun theory. It would not make any difference whether appellant neglected to record his papers because of reliance in the honesty of appellee or not, for, independent of such trust, appellee had no right, in law or morals, to appropriate the property of another to his own use and benefit.

Appellee fails also to understand that proof of the taking of another's property, with the intent to appropriate it to the use and benefit of the taker, is proof of fraud. If it had been personal property, it might have been given a harsher name in a court of criminal jurisdiction. The evidence clearly proved fraud.

Appellant was under no obligation to speak

to appellee about the appropriation of his property, or to inform him that appellant had bought the land and paid for it, and like most men, if not all men, under like circumstances, did not want some one else to appropriate it. He had the right, so far as appellee was concerned, to remain silent, and there is no rule, in all the broad realm of equity that appellee can invoke in behalf of his act in selling the same land twice and appropriating the purchase money each time.

[4] Appellee is liable to appellant, and should be made to pay the value of the land at the time it was sold to appellant, with 6 per cent. interest, and if this court had sufficient data upon which to determine that value, judgment would be rendered here in his favor for that amount.

The judgment will be reversed, with instructions to the district court to take no action except to ascertain the market value of the land per acre at the time that it was sold to appellant, and when that fact is ascertained to render judgment for that amount with 6 per cent. interest thereon per annum and all costs in this behalf expended.

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes